<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JARROD E. LITTLE, | : | |
| | : | |
| Plaintiff, | : | Civil No. 10-567 (JBS) |
| | : | |
| v. | : | |
| | : | |
| CAPE MAY COUNTY | : | **OPINION** |
| CORRECTIONAL CENTER, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**APPEARANCES:**

>   JARROD E. LITTLE, Plaintiff <u>pro</u> <u>se</u>
>   # 37027
>   Cape May County Correctional Center
>   4 Moore Road
>   Cape May, New Jersey 08210

**SIMANDLE**, District Judge

   This matter was administratively terminated by this Court, by Order entered on February 4, 2010, because it appeared that plaintiff's application for <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") status was incomplete and no filing fee had been paid.  (Docket entry no. 2).  On April 6, 2010, Plaintiff submitted a complete IFP application and asked that his case be re-opened, pursuant to the directive in this Court's February 4, 2010 Order.  The matter was re-opened on the docket on June 24, 2010.  Based on Plaintiff's affidavit of indigence, the Court will grant the application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) (1998)

and order the Clerk of the Court to file the Complaint accordingly.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed in its entirety at this time.

I.   BACKGROUND

Plaintiff, Jarrod E. Little ("Little"), brings this civil action, pursuant to 42 U.S.C. § 1983, against the Cape May County Correctional Center ("CMCCC") and Inmate Services Representative Officer Grace.  (Complaint, Caption, ¶¶ 4b, 4c).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Little complains that he has been denied access to the law library at CMCCC on 11 Sundays, as follows: September 13, 2009; October 4, 2009; October 18, 2009; November 8, 2009; November 15, 2009; December 6, 2009; December 13, 2009; December 20, 2009; January 17, 2010; and January 31, 2010.  Little alleges that he has been denied access to the law library by defendant Grace on

2

more occasions but he does not have copies of the attendance sheets and requests slips.  He claims that he has been denied access three out of the five months he has been confined at CMCCC.  (Compl., ¶¶ 4b, 6).

On or about April 7, 2010, Little filed a letter with this Court seeking to amend his Complaint to add an additional claim concerning a denial of a disciplinary hearing.  On March 18, 2010, Little, along with 24 other inmates at CMCCC were charged with possession of a weapon, allegedly found by Correctional Officer ("CO") Weatherby.  The weapon had been found in the dayroom to which everyone had access.  In fact, one inmate confessed to ownership of the weapon, but his confession was disregarded.  Little was sanctioned to five (5) days loss of commissary privileges without the opportunity for a hearing. (Docket entry no. 6).

On or about April 8, 2010, Little again wrote to the Court to amend his Complaint.  In his second letter, Little seeks to add new defendants, namely, Captain Krych, Warden Lombardo, and Lt. Smith.  Little alleges that these defendants were notified as to his grievances concerning the denial of access to the law library, but ignored or refused to remedy the situation.  (Docket entry no. 7).

Finally, on or about April 20, 2010, Little submitted another amendment to his Complaint.  He states that his access to

3

the law library was denied on February 1, 2010 and February 2, 2010.  Little alleges that defendant Grace denied plaintiff's access to the law library because plaintiff purportedly had refused the law library services in the past, which Little contends is untrue.  On January 17, 2010, Little states that he was hired as an inmate law librarian, but defendant Grace continued to refuse to place plaintiff's name on the law library list on the following dates: January 30, 2010; February 2, 2010; February 3rd through February 8th, 2010; February 11, 2010; and February 14, 2010.  Little complained to newly named defendants, Captain Krych, Warden Lombardo, and Lt. Smith, but they did nothing to help plaintiff.  (Docket entry no. 8).

Little also complains that the law library does not provide pens, paper, carbon paper, access to the printer/copier, and typewriters.  In addition, defendants overcharge for photocopy of pages, at a rate of 25 cents per page for the first ten pages and 15 cents per page thereafter.  (Id.).

With respect to his claim about the failure to provide a disciplinary hearing, Little adds that Sgt. Sykes (shift supervisor), Lt. Smith, Lt. Denny, CO Weatherby, Sgt. Terrinoni, Warden Lombardo, Captain Krych, Undersheriff Maher, and Sgt. Peterson (Internal Affairs), were aware that plaintiff requested an opportunity to be heard on the disciplinary charges and did nothing to help plaintiff.  (Id.).

4

Little seeks injunctive relief and unspecified money
damages.  (Compl., ¶ 7).

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-
134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),
requires a district court to review a complaint in a civil action
in which a prisoner is proceeding in forma pauperis or seeks
redress against a governmental employee or entity.  The Court is
required to identify cognizable claims and to sua sponte dismiss
any claim that is frivolous, malicious, fails to state a claim
upon which relief may be granted, or seeks monetary relief from a
defendant who is immune from such relief.  28 U.S.C. §§
1915(e)(2)(B) and 1915A.  This action is subject to sua sponte
screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an
§ 1915A.

In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94
(2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and
Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United
States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff."  Morse v. Lower

5

Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court
need not, however, credit a pro se plaintiff's "bald assertions"
or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  Deutsch v. United
States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a
claim only if it appears "'beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v.
Gibson, 355 U.S. 41, 45-46 (1957)).  See also Erickson, 551 U.S.
at 93-94 (In a pro se prisoner civil rights complaint, the Court
reviewed whether the complaint complied with the pleading
requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard
for summary dismissal of a Complaint that fails to state a claim
in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).  The issue before
the Supreme Court was whether Iqbal's civil rights complaint
adequately alleged defendants' personal involvement in
discriminatory decisions regarding Iqbal's treatment during
detention at the Metropolitan Detention Center which, if true,
violated his constitutional rights.  Id.  The Court examined Rule

6

8(a)(2) of the Federal Rules of Civil Procedure which provides
that a complaint must contain "a short and plain statement of the
claim showing that the pleader is entitled to relief."
Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell
Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the
proposition that "[a] pleading that offers 'labels and
conclusions' or 'a formulaic recitation of the elements of a
cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting
Twombly, 550 U.S. at 555), the Supreme Court identified two
working principles underlying the failure to state a claim
standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
Fed.R.Civ.P. 8(d).

> conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 578 F.3d at 210.  The Third Circuit now requires that a district court

---

[2]   In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

must conduct the two-part analysis set forth in Iqbal when
presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be
> separated.  The District Court must accept all of the
> complaint's well-pleaded facts as true, but may disregard
> any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].
> Second, a District Court must then determine whether the
> facts alleged in the complaint are sufficient to show that
> the plaintiff has a "plausible claim for relief." [Id.]  In
> other words, a complaint must do more than allege the
> plaintiff's entitlement to relief.  A complaint has to
> "show" such an entitlement with its facts.  See Phillips,
> 515 F.3d at 234-35.  As the Supreme Court instructed in
> Iqbal, "[w]here the well-pleaded facts do not permit the
> court to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not 'show [n]'-'that
> the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at
> 1949-50].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to
> draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this
pro se pleading must be construed liberally in favor of
Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89
(2007).  Moreover, a court should not dismiss a complaint with
prejudice for failure to state a claim without granting leave to
amend, unless it finds bad faith, undue delay, prejudice or
futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-
111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir.
2000).

### III.  SECTION 1983 ACTIONS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, Little names the Cape May County Correctional Center ("CMCCC") as a defendant in this action.  However, the CMCCC must be dismissed from this lawsuit because it is not a "person" subject to liability under § 1983.  See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989)(correctional facility is not a person under § 1983); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976).

IV.   ANALYSIS

A.   Access to law Library Claim

This Court first considers Little's allegations that he has been denied access to the courts (via denial of access to the law library) in violation of his First and Fourteenth Amendment

rights.  Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[3] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  Id. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* Bounds, 430 U.S. at 823)(internal quotation omitted).

---

[3]  The right of access to the courts is an aspect of the First Amendment right to petition.  McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original). Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges. See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31, 2000). But see United States v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.

Here, Little fails to allege any actual injury as a result of the alleged denial of access to the law library.  He does not allege that he was unable to file this or any other complaint in the courts, and in fact, he has not been limited in filing the instant action, or his several other recent Complaints in this Court.  Instead, Little merely alleges that he has missed deadlines in unidentified actions.  Consequently, the allegations in the Complaint are too conclusory to show a denial of court access sufficient to rise to the level of a constitutional deprivation under the Iqbal pleading standard.  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation .... Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S.Ct. at 1949 (citations and internal quotation marks omitted).

Furthermore, Little does not articulate how the alleged denial of access to the law library has hindered his efforts to either pursue this claim or defend himself in any pending state proceedings. Therefore, his claim alleging denial of access to the courts based on an alleged failure to provide access to the law library will be dismissed without prejudice for failure to state a claim at this time.[4]

B. Denial of Disciplinary Due Process

Next, Little alleges that he did not receive a hearing with respect to disciplinary charges brought against him that resulted in a five days loss of commissary privileges. The Due Process Clause of the Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded

--------

[4] Little may seek leave to amend his Complaint to allege facts to show actual injury. To the extent that plaintiff chooses to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Little should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. Id. To avoid confusion, the safer course is to file an amended complaint that is complete in itself. Id.

14

without certain procedural protections.  U.S. CONST. amend. XIV.
In Wolff, the Supreme Court set forth the requirements of due
process in prison disciplinary hearings.  An inmate is entitled
to (1) written notice of the charges and no less than 24 hours to
marshal the facts and prepare a defense for an appearance at the
disciplinary hearing; (2) a written statement by the fact finder
as to the evidence relied on and the reasons for the disciplinary
action; and (3) an opportunity "to call witnesses and present
documentary evidence in his defense when to do so will not be
unduly hazardous to institutional safety or correctional goals."
Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an
inmate representative in some cases, and a written decision by
the factfinder as to evidence relied upon and findings.  See Von
Kahl, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994)(citing Wolff, 418
U.S. at 563-72).  However, in Wolff, the Supreme Court held that,
while prisoners retain certain basic constitutional rights,
including procedural due process protections, prison disciplinary
hearings are not part of criminal prosecution, and an inmate's
rights at such hearings may be curtailed by the demands and
realities of the prison environment.  Id. at 556-57; Young v.
Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, Little alleges that he and the 24 other inmates who
were charged with the "weapon" found in the common area, did not
receive a hearing before the loss of five (5) days commissary
privileges was imposed.  This allegation may be sufficient to

15

show that plaintiff's procedural due process rights were violated if the loss of commissary privileges constitutes a protected liberty interest.  However, for the reasons set forth below, this Court finds that the restriction imposed in this case, the loss of commissary privileges for a short duration, does not rise to the level of a constitutional deprivation that would implicate a protected liberty interest.

A liberty interest protected by the Due Process Clause may arise from either of two sources:  the Due Process Clause itself or State law.  See Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).  Analysis of whether a pretrial detainee, such as Little, has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  In Bell, the Supreme Court established that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  441 U.S. at 535-36.  The Court mandated a pragmatic approach to determining what constitutes punishment, and formulated the "reasonable relationship" test for determining whether the restriction is punitive.  Id., 441 U.S. at 539.  In other words, "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment."  Id.

The Supreme Court illuminated general guideposts for distinguishing restrictions that are punitive from those that are not:

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees. ..."

<u>Id.</u> at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  <u>Id.</u> at 540.  Retribution and deterrence, however, are not legitimate

nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor
are grossly exaggerated responses to genuine security
considerations.  Id. at 539 n.20, 561-62.  See also  Hubbard, 399
F.3d at 157-60, 164-67; Fuentes, 206 F.3d at 341-42.

    The Court exhorted, however, that

> In determining whether restrictions or conditions are
> reasonably related to the Government's interest in
> maintaining security and order and operating the institution
> in a manageable fashion, courts must heed our warning
> that"[s]uch considerations are peculiarly within the
> province and professional expertise of corrections
> officials, and, in the absence of substantial evidence in
> the record to indicate that the officials have exaggerated
> their response to these considerations, courts should
> ordinarily defer to their expert judgment in such matters.

Bell, 441 U.S. at 540 n. 23 (citations omitted).

    Unconstitutional punishment typically includes both
objective and subjective components.  See Stevenson v. Carroll,
495 F.3d 62, 68 (3d Cir. 2007).  In Wilson v. Seiter, 501 U.S.
294 (1991), the Supreme Court explained the objective component
as requiring an inquiry into whether "the deprivation [was]
sufficiently serious" and the subjective component as inquiring
whether "the officials act[ed] with a sufficiently culpable state
of mind[.]" Id., 501 U.S. at 298.  Bell did not abandon this two-
part analysis, but rather allowed for an inference of mens rea
where the restriction was arbitrary or purposeless, or where the
restriction was excessive, even if it would accomplish a
legitimate governmental objective.  Bell, 441 U.S. at 538-39 and
n. 20.

Here, it is plain from the allegations in the Complaint that Little can not satisfy the objective component, that is, he cannot show that the deprivation suffered was so serious or excessively restrictive as to constitute an impermissible punishment in violation of the Due Process Clause.  Further, there was no disparate treatment among the 24 inmates having access to the common area where the "weapon" was found.  The officials merely imposed a five-day loss of commissary privileges on all the inmates, which was not so harsh or arbitrary as to cause plaintiff (and the other inmates) "to endure genuine privations and hardship over an extended period of time" that "might raise serious questions under the Due Process Clause as to whether [the restriction] amounted to punishment."  Bell, 441 U.S. at 542.

Indeed, in evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution.  See Hubbard v. Taylor, 399 F.3d 150, 160 (3d Cir. 2005).  In this case, Little admits that he was not singled out for punishment.  All 24 inmates received a 5-day loss of commissary privileges.  Moreover, plaintiff was not placed in any punitive segregated confinement. Thus, the totality of circumstances in this case do not show a serious deprivation or an arbitrary, purposeless, excessive restriction to suggest that the loss of commissary privileges for five days was an unconstitutional punishment.

Finally, in Bell, the Supreme Court instructed that if there is a reasonable relationship between the particular restriction of pretrial detention and a legitimate governmental objective, then that restriction, without more, does not infringe upon a detainee's constitutional rights.  Bell, 441 U.S. at 539.  In this case, the admitted allegations of the Complaint clearly show that the relationship between the 5-day loss of commissary privileges and jail officials' goal in maintaining jail security after finding a "weapon" in the common area was reasonable.  See Bell, 441 U.S. at 540 (the governmental interest in maintaining jail security for the duration of a pretrial detainee's detention is substantial).  Thus, it is clear that the minimal loss of commissary privileges as imposed against all of the inmates, and not just plaintiff, shows that the restriction was not imposed as a disciplinary infraction (which would require a disciplinary hearing under Wolff v. McDonnell), but rather as a purely administrative action to maintain jail security.  Consequently, the degree of process due plaintiff in this regard is only that which is minimally required under Hewitt v. Helms, 459 U.S. 460 (1983).  Namely, due process requires only an informal non-adversary review of the evidence, which is satisfied when an inmate receives some notice of the charges against him and an opportunity to present his view to the corrections official charged with deciding the administrative restriction.  Id., 459 U.S. at 476.

Here, Little was given notice of the charge and was able to express his view and disagreement with the appropriate corrections official at Cape May County Correctional Center, as named in his amended Complaint.  Therefore, this Court finds no due process violation and plaintiff's claim will be dismissed with prejudice accordingly, for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### IV.   CONCLUSION

For the reasons set forth above, plaintiff's access to courts (law library) claim will be dismissed without prejudice, in its entirety as against the named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim at this time.  Plaintiff's due process claim will be dismissed with prejudice in its entirety as against the named defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim upon which relief may be granted.  An appropriate order follows.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
United States District Judge

Dated:  **July 21, 2010**